IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GREGORY D. SMITH,

                              Plaintiff,

   v.                                                    1:06-cv-1441-WSD

CONTINENTAL CASUALTY
COMPANY and THE HARTFORD
LIFE AND ACCIDENT
INSURANCE COMPANY d/b/a
THE HARTFORD GROUP
BENEFITS,

                              Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Reconsideration [36].

## I.    BACKGROUND

On July 16, 2007, the Court issued an order that construed relevant Policy provisions and remanded several factual determinations related to the causes of Smith's disability back to the parties ("July 16 Order").[1]  In their summary judgment briefing, Defendants argued that Smith's claim was time barred because

---

[1]  The facts relating to this matter are set forth in the Court's July 16, 2007 order and will not be restated here.

the Policy's limitations period began to run on the date of occurrence of the claimed injury.  Smith argued that the claim was not time barred because the limitations period did not begin to run until the date on which he had both failed to work for 12 months and had received Dr. Empting's certification that his disability was likely to be permanent continuous, and total.

For the reasons set forth in the July 16 Order, the Court construed the Policy's limitations language differently than proposed by either party.  The Court, after closely studying the Policy as a whole, held that the limitation period began on the date on which two conditions were met: "(1) the insured stops working because of a disability; and (2) the insured reasonably becomes aware that the disability is permanent, total, and continuous."  (July 16 Order at 33).  The Court noted, "the insurer cannot assert that the clock starts to run when the insured has a reasonable belief that his disability might not be permanent."  (Id. at 34 n.10).[2]

_____

[2]  Smith may have subjectively believed himself to be permanently disabled before he was advised that he was permanently disabled by a competent medical authority.  The record shows an issue of fact on this issue, and Smith claims that the first time a competent medical authority made him aware of the scope of his disability was April of 2004.  The Court concludes that the limitations period is determined by a *reasonable* belief that a disability is permanent, total, and continuous, that is, a belief founded on the opinion of a competent medical authority.  The Court believes that this interpretation is the most consistent with the language and intent of the Policy.  Indeed, if a Plan participant filed a claim based

The Court denied summary judgment on this ground, finding the existence of a genuine issue of fact concerning when Smith first was made aware that his disability was likely to be permanent.  Defendants have moved for reconsideration on this limited issue, claiming the record shows conclusively that Smith knew his disability to be permanent on October 6, 2000.

## II.   DISCUSSION

A motion for reconsideration is appropriate only where there is: "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error or prevent manifest injustice." <u>Jersawitz v. People TV</u>, 71 F. Supp. 2d 1330, 1344 (N.D. Ga. 1999).  "Motions for reconsideration shall not be filed as a matter of routine practice."  N.D. Ga. Local Rule 7.2E.  A motion for reconsideration is not "an opportunity for the moving party and their counsel to instruct the court on how the court 'could have done it

---

only on a subjective belief that they were permanently disabled, Defendants would require them to support that belief with an opinion from a competent medical authority.

As noted in the July 16 Order, Smith had a duty of good faith under the Policy to seek such an opinion with reasonable diligence.  Defendants have not argued that Smith failed to diligently pursue medical opinions concerning the nature of his disability.

better' the first time," <u>Preserve Endangered Areas of Cobb's History, Inc. v.</u>

<u>United States Army Corps of Eng'rs</u>, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995),

nor should such a motion be used "to offer new legal theories or evidence that

could have been presented in conjunction with the previously filed motion or

response, unless a reason is given for failing to raise the issue at an earlier stage in

the litigation." <u>Bryan v. Murphy</u>, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003)

(citation and quotation omitted).

      Defendants have not presented any new facts or intervening law pertinent to

this case.  Although Defendants claim the Court made a manifest error of fact in

the July 16 Order, they show, at most, that they disagree with the Court's

application of the facts in the record to its construction of the Policy.  This

disagreement is not an appropriate ground for reconsideration.[3]

---

[3] Defendants contrive to deconstruct the following question on a benefits claim form, to which Smith answered "yes" on October 6, 2000, to lay the predicate for their claim that he knew of the permanent, total, and continuous nature of his disability by that date:

> Are you, at the present time, making a claim under the
> above cited policy for an accidental permanent total
> disability indemnity on the basis that your disability is
> caused by bodily injury due to an accident occurring
> directly and independently of all other causes, to the
> extent that as a result of this injury you are totally and
> permanently disabled from engaging in each and every

Summary judgment is only appropriate if the record shows no reasonable juror could conclude that Smith was reasonably made aware that he was permanently disabled on October 6, 2000, or, conversely, that he held no reasonable belief that he was not permanently disabled on that date. As the Court held in the July 16 Order, the record shows a genuine issue of fact regarding the date on which Smith was made aware that his disability was permanent.[4] In March of 2000, Dr. Velazco, who performed the initial surgery on Smith's back, suggested that Smith's symptoms would continue improving. In July of 2000, Dr. Velazco recommended that Smith undergo further surgery to remove the rods in his back. Dr. Velazco noted a possibility that additional surgery could alleviate Smith's disabling symptoms.

_____

occupation or gainful employment for wage or profit for which you might be suited by reason of your education, training or experience?

The question is obscure, complicated, and, even to the Court, nearly beyond comprehension. A lay person's answer of "yes" to this question does not give rise to even a reasonable inference that Smith was "reasonably made aware" that his disability was permanent by October 6, 2000, and certainly does not prove that proposition "incontrovertibly."

[4] Although the Court does not weigh the evidence at this stage of the proceedings, the record, taken as a whole, suggests that Smith was likely not reasonably made aware that his disability was permanent by October 6, 2000.

Question 24 of the same insurance claim form relied on by Defendants asks, "What plans have you at present as to your future medical treatment?  As to future employment?"  Smith answered "Plans are uncertain.  Rods still have to be removed from back.  I am disable. [sic]."  Five days after completing this form, Smith consulted Dr. Empting, who stated that he was not able at that time to express an opinion on Smith's disability rating.  Dr. Empting states he told Smith that while his disability was total, he believed it to be temporary.

The record contains evidence that Smith may have had a reasonable belief his disability was not permanent from shortly after the 1999 surgery until 2004. That Smith may have held a reasonable belief in October of 2000 that his disability was not permanent is further suggested by his answer to question 24 on the claim form, in which stated he was "uncertain" as to his plans for future work and would remain so until he made a decision about corrective surgery.  An issue of fact thus exists, and summary judgment is not appropriate.[5]

---

[5]  Smith submitted a supplemental affidavit in response to Defendants' Motion for Reconsideration stating categorically, "I did not become aware that my nerve injury in my back would render me permanently disabled from working in any job until . . . April 2004." (Smith Aff. at ¶ 2.)  The affidavit also states that Dr. Empting and Dr. Velazco both told him they expected his condition to improve. Smith states that when he filled out the October 6 form, he did not know whether his condition would improve with time.  (Id. at ¶ 7.)  The Court does not rely on

III.    **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Reconsideration

[36] is **DENIED**.

**SO ORDERED** this 10th day of December, 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

this affidavit in denying the motion for reconsideration.  The affidavit does,
however, substantiate the factual dispute.